IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shereen Fakhoury, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18 C 7262 |
| ) | |
| Alsip Police Officer James ) | |
| Brongiel, et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Shereen Fakhoury was arrested by the Village of Oak Lawn Police Department in December of 2013 for driving under the influence. A warrant for her arrest was issued. On December 18, 2015, the Circuit Court of Cook County entered an Order declaring that the warrant had been executed. Plaintiff received a copy of that Order.

On November 1, 2017, Officer Brongiel of the Village of Alsip Police Department approached plaintiff in the driveway of her residence in the Village of Alsip and inquired about the warrant. Plaintiff told Officer Brongiel that the warrant had been executed and offered to produce a copy of the December 18, 2015, Order from her home. According to the complaint, Brongiel "contacted Alsip dispatch to verify the status" of the warrant and "was advised said warrant remained outstanding." Compl. at ¶ 21. Brongiel

refused to allow plaintiff to retrieve her copy of the Order and instead took her into custody.

Brongiel then drove plaintiff to a location on the border of the Village of Alsip and the Village of Oak Lawn, where he transferred her into the custody of Officer Carlson of the Oak Lawn Police Department. Officer Carlson contacted Oak Lawn Dispatch and, like Officer Brongiel, was advised that the warrant remained outstanding. Officer Carlson then transported plaintiff to the Oak Lawn Police Department Lockup. Plaintiff alleges that throughout this time, she repeatedly told the officers that the warrant had been executed and that she was in possession of a copy of the Order. Plaintiff repeatedly requested permission to contact her brother so that her brother could bring a copy of the Order to the Oak Lawn Police Station. Her requests were denied. Plaintiff also advised Officer Carlson that she suffered from an anxiety disorder requiring medication and requested permission to contact her brother so that her brother could bring her medication. This request was likewise denied.

Plaintiff was placed in a cell at the Oak Lawn Police Department at around noon the same day. Over the next two hours, plaintiff's brother contacted the Oak Lawn Police Department to advise them of the Order stating that the warrant had been executed, but Officer Carlson and/or other officers of the Oak Lawn Police Department "continued to refuse to receive said Court

2

Order" and continued to detain plaintiff. Compl. at ¶ 50. Shortly before 3:00 p.m., plaintiff complained of pain in her chest and side. She was transferred to a hospital emergency room ten minutes later, where she was treated for an aggravation of her anxiety disorder and returned to the Oak Lawn Police Department shortly after 7:00 p.m. She remained in the custody of the Oak Lawn Police Department until her appearance at a hearing pursuant to the warrant in the Circuit Court of Cook County at 8:35 the following morning. The judge determined that the warrant had been executed on December 18, 2015, and entered an order stating that all warrants issued in plaintiff's cause prior to the hearing date were quashed and recalled. Plaintiff was released from custody, and this lawsuit followed.

The complaint alleges that Officers Brongiel, Carlson, unknown others, and the Villages of Alsip and Oak Lawn falsely arrested and falsely imprisoned plaintiff in violation of the Fourth and Fourteenth Amendment. She also alleges that Officers Carlson and unknown others, and the Village of Oak Lawn, denied her medical care in violation of the Fourth and Fourteenth Amendments. Finally, she asserts against all defendants state law claims for intentional infliction of emotional distress and false imprisonment. Against the municipal defendants, plaintiff also pleads counts captioned respondeat superior and indemnification. Defendants Brongiel and the Village of Alsip have answered the

complaint. Defendants Carlson and the Village of Oak Lawn ("the Village") have moved to dismiss the claims directed to them: false arrest and false imprisonment in violation of the Constitution and Illinois state law; denial of medical care in violation of the Constitution; and intentional infliction of emotional distress ("IIED"). For the reasons that follow, the motion is granted.

I.

A motion to dismiss tests the sufficiency of a complaint, not its merits. *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). I assume the truth of plaintiff's factual allegations and draw all reasonable inferences in her favor. *Id*. at 1521.

Defendants raise several arguments for dismissal. First, they assert that the plaintiff's own allegations establish probable cause for her arrest, eviscerating her Fourth Amendment and Illinois wrongful arrest claims. At a minimum, defendants continue, the alleged facts show that Officer Carlson had "arguable probable cause" for her arrest, so he is qualifiedly immune from liability for the alleged constitutional violations. Next, defendants argue that plaintiff's allegations do not state an actionable claim for deliberate indifference to a serious medical need or IIED. Defendants' final argument is that there is no basis for municipal liability because even assuming that the complaint pleads a constitutional violation by Carlson, it fails to allege any facts suggesting the existence of a municipal policy, custom,

or practice as required to hold the Village liable under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), and because each of her substantive state law claims is subject to dismissal. Plaintiff offers no response to defendants' argument concerning *Monell* liability, but she disputes their remaining arguments *seriatim*.

II.

I begin with the issue of probable cause, since its existence "is an absolute defense" to both federal and state claims based on a wrongful arrest. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (probable cause defeats claims for false arrest and false imprisonment; *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010) (same under Illinois law). An officer has probable cause to arrest when the totality of the facts and circumstances within the officer's knowledge objectively support a reasonable belief that the individual has committed a crime. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). "Qualified immunity is available if there is 'arguable probable cause' for the arrest. *Muhammad v. Pearson*, 900 F.3d 898, 908 (7th Cir. 2018)

At the outset, it bears noting that plaintiff does not allege that Carlson was involved in the decision to arrest her. Instead, she states that Carlson took custody of her *after* she was detained by Officer Brongiel. *See* Compl. at ¶ 25 (Officer Brongiel took

5

plaintiff into custody at her home). According to the complaint, Brongiel transferred custody of plaintiff to Carlson on a street corner at the border of Alsip and Oak Lawn. *Id*. at ¶¶ 26-27. There, Carlson contacted the Oak Lawn police department and learned—just as Officer Brongiel had from the Alsip police department—that a warrant for her arrest was outstanding. *Id*. at ¶¶ 28, 21. Carlson then transported plaintiff to the Village lockup. *Id*. at ¶ 28. These facts do not easily lend themselves to a claim of false arrest against Carlson, who had no role in plaintiff's initial arrest and took affirmative steps to confirm that her custody was lawful prior to taking custody of her. Those steps yielded information supporting probable cause. Moreover, unlike in plaintiff's central authority, *McMurry v. Sheahan*, No. 95 C 999, 1996 WL 296585 (N.D. Ill. May 31, 1996) (Gettleman, J.), plaintiff neither alleges nor offers facts to suggest that Carlson knew or should have known that the information he obtained from his fellow officers was unreliable. *Cf. id*. at *7. (computerized system showing outstanding warrants was allegedly known to be "an utter failure and cannot be relied upon," and "routinely leads to false arrests.")(citations omitted).

"Generally, a person arrested pursuant to a facially valid warrant cannot prevail in a § 1983 suit for false arrest," unless the arresting officer knew the warrant was invalid. *Williamson v. Curran*, 714 F.3d 432, 443-44 (7th Cir. 2013) (*quoting Baker v.*

6

*McCollan*, 443 U.S. 137 143 (1979)). Plaintiff insists that she told Carlson—as she had Brongiel—that her arrest warrant had been executed, and that she could prove it by showing them the Order. But even with the Order in hand, Officer Carlson would have been faced with facially contradictory evidence: information he obtained from his fellow officers indicating that a warrant for plaintiff's arrest was outstanding, and a judicial order that, on its face, appeared to show the contrary. "Courts, and not the police, should determine whether to credit a suspect's claim of innocence." *Dakhlallah v. Zima*, 42 F. Supp. 3d 901, 909 (N.D. Ill. 2014). *See also Reynolds v. Jamison*, 488 F.3d 756, 762 (7th Cir. 2007) (suspect's denial of guilt "does not negate probable cause for his arrest"). While an officer "may not close his eyes to facts that would clarify the situation," *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009), the Fourth Amendment does not require officers in the field to resolve inconsistencies in the facts they observe prior to taking a suspect into custody, *see Leaver v. Shortess*, 844 F.3d 665, 669 (7th Cir. 2016) (conflicting information uncovered in police investigation does not "conclusively negate" probable cause). *See also McBride* 576 F.3d at 708 ("[t]here is no constitutional or statutory requirement that before an arrest can be made the police must conduct a trial.") (quoting *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986)); *Dakhlallah* 42 F. Supp. 3d at 921 (N.D. Ill. 2014) (information

7

arresting officer obtained from law enforcement database supported probable cause, notwithstanding suspect's offer to provide copy of a court order showing inaccuracy of that information).

At a minimum, Officer Carlson is entitled to qualified immunity because a reasonable officer in his situation could have believed that he had probable cause to detain plaintiff "at least long enough to figure out definitively" whether plaintiff's arrest warrant was still outstanding. *See Muhammad v. Pearson*, 900 F.3d 898, 909 (7th Cir. 2018) (officer executing search warrant had "arguable probable cause" to arrest individual who "did not look like the picture" the officer had of the suspect, but who met other criteria known about the suspect and had no identification to prove who he was or where he lived). Plaintiff argues that qualified immunity is inappropriate on the facts alleged, but her cited authorities confirm the opposite. *See Fleming v. Livingston County, Ill.*, 674 F.3d 874, 879 (7th Cir. 2012) (granting qualified immunity to arresting officer who "reasonably, albeit possibly mistakenly" believed probable cause existed); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 278 (5th Cir. 1992) (granting qualified immunity to officer who arrested the plaintiff based on "a computer check" that revealed an outstanding warrant, notwithstanding the plaintiff's insistence that the warrant had been withdrawn); *Lauer v. Dahlberg*, 717 F. Supp 612 (N.D. Ill. 1989)(granting qualified immunity to officer who arrested the

plaintiff based on information from law enforcement database showing "active status" of warrant, even though the plaintiff provided a copy of a warrant recall order). Each of these cases supports the conclusion that based on the complaint's allegations, Officer Carlson is entitled to qualified immunity for plaintiff's false arrest and imprisonment claims.

Plaintiff's claim for deliberate indifference similarly fails on the pleadings. To state an actionable claim for deliberate indifference, plaintiff must allege both that she suffers from an objectively serious medical condition and that Officer Carlson knew about the condition and the risk it posed but recklessly disregarded the risk. *Pyles v. Fahim*, 771 F.3d 403, 408-09 (7th Cir. 2014) (citation omitted). As the Seventh Circuit acknowledged in one of plaintiff's cited authorities, a plaintiff "can plead [herself] out of court by alleging facts which show that [she] has no claim," for deliberate indifference. *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). Plaintiff has done just that.

By her own account, plaintiff arrived at the Village of Oak Lawn police station at approximately noon; began complaining of chest and side pains at 2:44 p.m.; and was transferred to the hospital for treatment ten minutes later, at 2:54. Sensibly, plaintiff does not suggest that Officer Carlson or anyone else acting on behalf of the Village should have responded sooner to her symptoms, but she claims that they exhibited deliberate

9

indifference by refusing to allow her brother to bring her anxiety medication to her *before* she became symptomatic. The deliberate indifference analysis considers "the totality of an inmate's medical care," however, *id*. at 1375, and plaintiff's description of defendants' swift response to her first report of any symptoms thoroughly undercuts her argument. Moreover, although plaintiff alleges that a form filled out at the police station indicated "possible suicidal tendencies," Compl. at ¶ 42, she does not allege that Officer Carlson knew about this notation or was aware of any other facts signaling that plaintiff's condition posed "an excessive risk" to her health and safety if left untreated. *Gutierrez*, 111 F.3d at 1369 (prison official cannot be liable for deliberate indifference unless he was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually drew that inference) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). For these reasons, the complaint fails to attribute to Carlson a "sufficiently culpable state of mind" to support plaintiff's claim for deliberate indifference. *Gutierrez*, 111 F.3d at 1369 (citation omitted).

Because plaintiff has pled no underlying constitutional violation by Carlson or any other individual acting on behalf of the Village, her *Monell* claim against the Village likewise fails. *Horton v. Pobjecky*, 883 F.3d 941, 954 (7th Cir. 2018) (municipality "cannot be liable under *Monell* when there is no underlying

constitutional violation by a municipal employee."). At all events, even assuming an underlying violation, plaintiff offers no facts to suggest that any injury she suffered was the result of an unconstitutional municipal policy, custom, or practice. *See Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014).

This leaves only plaintiff's state law claims for IIED, *respondeat superior*, and indemnification, which require little discussion. With respect to the IIED claim, plaintiff once again responds to defendants' argument—here on the issue of whether she has pled extreme or outrageous conduct—with authorities that undercut her position. She cites two cases in this connection, *Lopez v. City of Chicago*, 464 F.3d 711 (7th Cir. 2006), and *Kerr v. Weidert*, No. 4:13-cv-04102-SLD-JEH, 2016 WL 5660383 (C.D. Ill. Sept. 29, 2016) (Darrow, J.). In *Lopez*, the Seventh Circuit reversed a judgment in the defendants' favor and remanded for a trial on the plaintiff's IIED claim, which was based on evidence that the defendants held the plaintiff shackled to the wall of a filthy, nine-by-seven-foot interrogation room for four days; gave him food and drink only once during that time; and granted him access to a bathroom only after he "scream[ed] from the top of [his] lungs." 464 F.3d at 715. Those facts bear no resemblance to the conduct plaintiff attributes to defendants here, and the comparison serves only to underscore that the wrongdoing she alleges falls short of the high bar that applies to such claims.

11

Indeed, in *Kerr*, the plaintiff's IIED claim was based on allegations that a police officer had tackled the "non-resistant and peaceful" plaintiff, forced his knee into the plaintiff's side, and pulled the plaintiff's arm behind him. 2016 WL 5660383, at *8. The court dismissed the claim on the ground that the officer's alleged brutality was not "beyond all possible bounds of decency," and fell short of the kind of extreme or outrageous conduct required to support a claim for IIED. *Id*. at *9. So is it here.

With nothing remaining of plaintiff's substantive claims against Officer Carlson or any other individual officer, her claims for *respondeat superior* and indemnification against the Village must be dismissed.

### III.

For the foregoing reasons, defendants' motion to dismiss is granted.

**ENTER ORDER:**

_____
Elaine E. Bucklo
United States District Judge

Dated: July 2, 2019